[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15087
Non-Argument Calendar
_____

D.C. Docket Nos. 0:15-cv-60212-RLR,
0:15-cv-61648-RLR


DENNIS LEE KEMP,

Plaintiff-Appellant,

versus

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.


_____

No. 16-15169
Non-Argument Calendar
_____

D.C. Docket Nos. 0:15-cv-60212-RLR,
0:15-cv-61648-RLR


ANDREW BOOTH BUCKMAN,

Plaintiff-Appellant,

versus

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(October 10, 2017)

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Dennis Kemp brought suit against USAA alleging that USAA acted in bad faith in representing their insured, Andrew Buckman. Andrew Buckman also sued USAA, and the two lawsuits were joined. The district court granted summary judgment to USAA, holding no reasonable jury could conclude that USAA acted in bad faith. Kemp and Buckman timely appealed.

"We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court." Mesa v. Clarendon Nat'l Ins. Co., 799 F.3d 1353, 1358 (11th Cir. 2015). We "view the evidence in the light most favorable to the non-moving party and will affirm only if the movant shows that no genuine issues of material fact exist." Id. Because we are sitting in diversity jurisdiction, we apply the law of the forum state, Florida. Bravo v. United States,

577 F.3d 1324, 1325 (11th Cir. 2009).  Under Florida law, "[a]n insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980). In exercising this duty, an insurer has the obligation to act in good faith. Id. The question of good faith in handling a claim is determined under the totality of the circumstances. See Berges v. Infinity Ins. Co., 896 So. 2d 665, 680 (Fla. 2004). Because no reasonable jury could conclude that the alleged negligence on the part of USAA caused the failure to settle, and because no reasonable jury could conclude that USAA acted in bad faith, we affirm the judgment of the district court.

## I. Background

We assume the parties are familiar with the facts, so we will limit our discussion to the facts relevant to USAA's handling of the claim. Buckman informed USAA of the accident on November 12, 2010. He told USAA he was not under the influence of alcohol, and he did not mention that Mrs. Kemp had died in the accident. On November 15, claims adjuster Mr. Culver had the bodily injury reserves for the claim set at the full amount of the policy limits, $100,000. Culver contacted Buckman and learned he had a lawyer, at which point he ceased contact with Buckman and sent a message to his lawyer.

On November 16, Cindy Goldstein, Kemp's lawyer, sent a letter to USAA. The letter set conditions for settlement of the case and requested compliance within 30 days. Goldstein later testified that she would have settled the case if a check had been tendered within seven to ten business days. Between November 15 and November 23 USAA made multiple unsuccessful attempts to contact Buckman's counsel. On November 23, USAA forwarded the November 16 letter to Buckman's counsel and stated that if they failed to reach a settlement within Buckman's policy limits he would be personally liable for any excess damages over his policy limit. On November 30, fourteen days after the original letter, Goldstein sent a second letter to Culver withdrawing the settlement offer. Subsequently, Kemp brought suit against Buckman.

On December 3, after speaking to Buckman's counsel for the first time, USAA authorized an offer for the policy limit of $100,000. On December 7, USAA sent a letter to Goldstein offering to settle the case for $100,000 and stating that a check had been sent. The letter included a proposed release of liability that contained inappropriate property damage language. On December 20, USAA learned that the check had not been received by Goldstein and sent a second check. Goldstein received the check on or before December 30, 2010.

On January 3, Goldstein sent a letter stating her client was reconsidering the settlement for $100,000 but included a list of requests. This list included a request

4

that Buckman inform her, if he consumed alcohol prior to the crash, who provided him with the alcohol. On January 4, USAA forwarded this letter to Buckman's counsel, informing him to provide the information and affidavit directly to Goldstein prior to the deadline in Goldstein's letter. USAA also informed Buckman that the decision to provide the requested information rested solely with him, but that his lawyer should discuss with him the legal ramifications of failing to provide the information requested by Goldstein. Buckman's counsel timely sent a response to Goldstein providing all of the information requested except for the question about the consumption of alcohol. In response to that question, Buckman invoked his Fifth Amendment rights.

After this exchange, Kemp went forward with the suit against Buckman and was awarded a verdict in the amount of $10,000,000. Kemp then brought suit against USAA, alleging that they breached their duty of good faith to Buckman by not settling the claim and avoiding the excess judgment. Buckman also brought suit against USAA, and the suits were consolidated. The district court granted summary judgment for USAA, and Kemp and Buckman timely appealed.

## II. Discussion

Kemp argues that genuine issues of material fact exist as to whether USAA breached its duty of good faith to its insured. Under Florida law, an insurer has an obligation "to advise the insured of settlement opportunities, to advise as to the

5

probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." Gutierrez, 386 So. 2d at 785. Although "reasonable diligence and ordinary care" are relevant in determining good faith, the standard for determining liability "is bad faith rather than negligence." Campbell v. Gov. Emps. Ins. Co., 306 So. 2d 525, 530–31 (Fla. 1974).

Specifically, Kemp argues that USAA sent a settlement check to the wrong address which caused the check to be received after the deadline set by Kemp, USAA sent a release with improper language, and USAA did not notice that Kemp had requested permission to take a statement from Buckman until after the deadline set by Kemp had passed. Viewed in the light most favorable to the non-moving party, Kemp argues that these factors raise a genuine issue of material fact as to USAA's negligence in handling the claim, and therefore to USAA's potential bad faith.

A. USAA's Alleged Negligence Did Not Cause the Failure to Settle

Viewed in the light most favorable to Kemp, the evidence does raise a question as to some negligence on the part of USAA in handling the claim.[1] However, there is no evidence that USAA's negligence was in any way a cause of the excess judgment. See Mesa, 799 F.3d at 1360. First, Kemp withdrew his

---

[1] However, while negligence is relevant to the issue of bad faith, it is not sufficient on its own to show bad faith. See discussion below.

settlement offer on November 30, only two weeks after sending the offer and well before the 30 day deadline. All of USAA's potentially negligent actions relating to this offer occurred after the offer had been withdrawn. Although Kemp's counsel said that a settlement would have been accepted if the check had been sent within seven to ten business days, there was no reason for USAA to think that they needed to respond within that time period when Kemp explicitly gave USAA a deadline of 30 days. Even viewing the evidence in the light most favorable to Kemp, there is no reason to believe that a settlement would have been achieved if USAA had not been negligent as alleged in handling the claim before December 30. These facts demonstrate at best "a need for [USAA] to augment its claims practices, not that [USAA]'s actions rose to the level of bad faith." Mesa, 799 F.3d at 1360.

Moreover, Kemp reopened settlement talks on January 3, four days after receiving the $100,000 check from USAA. Even drawing all inferences in Kemp's favor, USAA's alleged negligence did not cause a failure to settle because Kemp reopened settlement negotiations (after withdrawing his settlement offer a month earlier) after all of the incidents whereby USAA was allegedly negligent.

B. USAA's Alleged Negligence in Not Offering the Full Limits Within Seven to Ten Days Did Not Rise to the Level of Bad Faith

In addition to concluding that USAA's alleged negligence was not a cause of the failure to settle the case, we also conclude that no reasonable jury could find that USAA acted in bad faith by failing to offer the full limits within seven to ten days. We agree with the district court in this regard. The district court concluded:

> [U]nder the totality of the circumstances, no reasonable jury could conclude that USAA acted in bad faith. It is undisputed that USAA attempted to offer the full amount of the policy limits 26 days after the accident occurred and 25 [sic] days after Kemp's initial demand. It is also undisputed that USAA's adjuster took immediate action to investigate the claim and kept Buckman and his counsel apprised of the settlement offers and demands made by Kemp's counsel.
>
> Plaintiffs raise several points that they argue establish bad faith. Initially, they argue that USAA should have immediately settled on November 16, when Kemp made his initial demand for the policy limits. *See* DE 93 at 12 (Plaintiff's Response). They point to testimony from Kemp's counsel that, if USAA had tendered the policy limits within ten days, Kemp likely would have settled. *See* DE 93-1 at 3 (Goldstein Deposition at 111:12-25). On the date of the demand, based on the claim notes, USAA's adjuster had reviewed a newspaper article stating that Kemp's wife had died as a result of the accident and that Buckman's car had rear-ended her car when she was pulled over on the side of the Florida Turnpike. *See* DE 82-4 at 5 (Claim Notes). However, the article also stated that no charges had been filed and the Florida Highway Patrol was continuing to investigate the accident. *Id.* Buckman had given a statement to USAA in which he denied that drugs or alcohol were involved in the crash and stated that no citations had been issued. *See* DE 82-6 at 3, 5. USAA's adjuster immediately attempted to obtain a copy of the police report regarding the accident and speak with Buckman, but was unable to either obtain the report or speak to Buckman's counsel until December 2 and 3, respectively.
>
> When considering all of the undisputed facts in this case, USAA's delay while it investigated the accident is not evidence of bad faith. Kemp's November 16 demand for the policy limits gave USAA thirty days to respond. At the time the demand was made, there

8

was no indication that Kemp would withdraw the offer if USAA failed to respond within seven to ten days, even though Kemp's counsel later testified that she expected a response from USAA in that time frame.

District Court Order at 11–12.

C. USAA's Alleged Negligence in Failing to More Forcefully Urge Buckman to Comply with Kemp's January 3 Request for Alcohol Use Information Neither Caused the Failure to Settle nor Rose to the level of Bad Faith.

In addition to their alleged negligence in responding to Kemp's initial settlement offer, Kemp argues that USAA failed to sufficiently advise Buckman to cooperate in order to avoid an excess judgment and that this failure raises a genuine question of material fact as to USAA's good faith in handling the claim. USAA responds that they informed Buckman of the possibility of an excess judgment in their letter on November 23, when they told him that he would be "personally liable for any excess amount" if a settlement was not reached within his policy limits.

In Mesa, the insurer "did not mention" that their insured "could be exposed to an excess judgment." 799 F.3d at 1357. However, we held that there was insufficient evidence to demonstrate that the insurer acted in bad faith because the failure to notify "was not the cause of the excess judgment." Id. at 1360.

Specifically, Kemp claims that USAA did not sufficiently urge Buckman to comply with all the conditions listed by Kemp's counsel in her January 3 letter,

9

including in particular the condition relating to Buckman's alcohol use. However, USAA did notify Buckman of the possibility of an excess judgment. Additionally, Buckman had a criminal case pending against him and USAA made prompt and repeated attempts to contact his criminal defense attorney, Mr. Salnick. Also, USAA had assigned an attorney to defend Buckman in the tort action by Kemp, and USAA requested that Buckman discuss with his lawyers the legal ramifications of failing to provide the alcohol information requested in Kemp's January 3 letter reopening the possibility of settlement. However, Mr. Salnick stated that he would never let a client give such a statement. Viewed in the light most favorable to Kemp, we cannot conclude that a reasonable jury could find that USAA's failure to more forcefully urge Buckman to comply with this request was a cause of the failure to settle; nor could a reasonable jury conclude that USAA's conduct in that regard rose to the level of bad faith.

## IV. Conclusion

For the foregoing reasons, the district court's grant of summary judgment is **AFFIRMED.**